DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Common Pleas Court judgment that revoked community control sanctions imposed on Bobby O. Boling, defendant below and appellant herein, and ordered appellant to serve the remainder of a four year prison term.
The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT VIOLATED THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT FAILED TO CONDUCT A BIFURCATED HEARING ON THE MOTION TO TERMINATE COMMUNITY CONTROL."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT VIOLATED OHIO SENTENCING STATUTES WHEN IT SENTENCED APPELLANT BOLING TO FIVE YEARS POST-RELEASE CONTROL FOR A SECOND DEGREE FELONY OFFENSE."
During the evening of November 10, 1997, appellant and Iris Norris hosted a party at their home. Apparently, a great deal of alcohol (and allegedly some drugs) were consumed.[1] The festivities concluded around 11:00 p.m. Sometime later, appellant struck Norris and inflicted multiple traumas to her upper torso and head. When Norris didn't awake the following morning, appellant took her to the hospital. Appellant thereafter fled to Florida, but later returned to Ohio.
On February 26, 1998, the Athens County Grand Jury returned an indictment charging appellant with felonious assault in violation of R.C. 2903.11(A)(1). Appellant eventually pled no contest in exchange for the prosecution's recommendation that he serve a four year prison sentence. The prosecution further agreed not to oppose judicial release after two years. After the trial court questioned appellant to make sure that his plea was knowing and voluntary and after the court heard a recitation of facts, the court accepted his plea and found him guilty. The court accepted the State's recommendation and ordered appellant to serve a four year prison term.[2]
On March 1, 2000, appellant filed a motion for judicial release. Pursuant to the terms of the plea bargain, the State did not oppose appellant's motion. After additional case review and evaluation, the trial court released appellant from prison to the SEPTA center and ordered him to "fully and successfully complete the program."[3]
Several months later, appellant received an administrative release from SEPTA for some undisclosed "medical" reason. The trial court ordered appellant to return to SEPTA after his physician concluded that he could fully participate in the program.
On January 17, 2001, appellant was arrested for driving while under the influence of alcohol and driving with a suspended license. The State filed a notice of violation of community control and the matter was set for a "[f]irst [s]tage [h]earing" on April 3, 2001. Appellant admitted to these offenses and the trial court found him in violation of his community control. Then, at the same hearing and over counsel's objections, the court proceeded to sentencing.
After the court considered various statutory recidivism factors, the seriousness of the offenses and the fact that appellant committed them while on community control, the trial court concluded that appellant was no longer amenable to such sanctions and that a prison sentence was appropriate. The court sentenced appellant to four years in prison, with credit for time served, and further ordered that after his release he would be subject to five years of post release control supervision. Prior to entry of that judgment, however, appellant renewed his request for a second hearing on the community control violation disposition. Appellant's motion asserted that the April 3rd hearing was a preliminary hearing and that he was entitled to a final revocation hearing in which he could present evidence concerning alternative punishment options. The trial court denied his motion on April 19, 2001. The court noted that it had combined the preliminary hearing and the final hearing and that appellant should have been prepared for his disposition hearing to immediately follow the first stage. The court also reasoned that appellant was not prejudiced because his attorney had spoken extensively on mitigation during the combined hearing. This appeal followed.
 I
Appellant argues in his first assignment of error that the trial court erred when it refused to conduct a final hearing before it revoked community control. We agree with appellant.Our analysis begins with theFourteenth Amendment to the United States Constitution which prohibits states from depriving any person of liberty without due process of law. Before criminal probation can be revoked, a probationer must be afforded both a preliminary hearing and a subsequent final revocation hearing.State v. Qualls (1988), 50 Ohio App.3d 56, 57, 552 N.E.2d 957, 959; alsosee State v. Norman (May 25, 2001), Scioto App. No. 00CA2736, unreported; State ex rel. Kuntz v. Ohio Adult Parole Authority (Mar. 23, 1999), Franklin App. No. 95AP-319, unreported. These requirements also apply to community control termination proceedings. See State v. Mynhier
(Sep. 28, 2001), Hamilton App. C-000849, unreported; State v. Todd (Mar. 29, 1999), Auglaize App. No. 2-98-25, unreported.
The United States Supreme Court has defined the parameters for these hearings. With respect to the preliminary hearing, probationers are entitled to notice of the alleged violation of probation, an opportunity to appear and to present exculpatory evidence, a conditional right to confront adverse witnesses, an independent decision and a written report of the hearing. Gagnon v. Scarpelli (1973), 411 U.S. 778, 786,36 L.Ed.2d 656, 664, 93 S.Ct. 1756, 1761; also see Morrissey v. Brewer (1972),408 U.S. 471, 487, 33 L.Ed.2d 484, 497, 92 S.Ct. 2593, 2603. The final hearing is much less summary and requires the following:
 "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole."
Gagnon, supra at 786, 36 L.Ed.2d at 664, 93 S.Ct. at 1761-1762;Morrissey, supra at 489, 33 L.Ed.2d at 499, 92 S.Ct. at 2604.
In the case sub judice the record reveals that this matter was set for a preliminary, or "first stage hearing," on April 3, 2001. No other hearings were scheduled or held. Thus, we agree that this procedure ran afoul of the United States Supreme Court requirements in the Gagnon andMorrissey cases for probation/community control revocation.
In its April 19, 2001 entry, the trial court noted that it combined the preliminary and final hearings. The court cited State v. Winter (Apr. 27, 1999), Monroe App. No. 791, unreported, and State v. Walker (Jul. 26, 1995), Jefferson App. No. 93-J-48, unreported, as authority for this procedure. We are not persuaded. We note that Winter and Walker involve preliminary hearings that were combined into final revocation hearings, but included the full panoply of procedural safeguards envisioned byGagnon. The instant case, however, involves a final revocation hearing combined into the preliminary hearing. Our colleagues on the Mahoning County Court of Appeals recently faced this very issue in State v.Weaver (2001), 141 Ohio App.3d 512, 516, 751 N.E.2d 1096, 1099-1100, and held as follows:
 "Although courts have ruled that a preliminary hearing and a final revocation hearing can be combined if there is no prejudice to the defendant, these cases essentially lacked a preliminary hearing rather than a final hearing. * * * State v. Winter (Apr. 27, 1999), Monroe App. No. 791, unreported * * * State v. Walker
(July. 26, 1995), Jefferson App. No. 93-J-48, unreported * * * Moreover, the defendants in these cases received written notice which disclosed the alleged violation and which stated that a hearing would be held on the issue of the alleged violation and the propriety of revocation. Id.
 Without notice that the hearing would proceed on revocation, appellant lacked the opportunity to prepare a defense in mitigation. Although appellant admitted that he failed to report, asked that probation be continued, and attempted to appeal to the court's leniency, the fact remains that appellant was never given notice or time to properly prepare his arguments on revocation or sentencing." (Emphasis added.)
We agree with the overall gist of this reasoning. However permissible it may be to combine a preliminary hearing into a final revocation hearing, it is a different matter to combine the final hearing into the preliminary one. As noted by the United States Supreme Court in Gagnon andMorrissey, the final hearing is less summary and involves more procedural safeguards and requirements.
Moreover, we note that appellant received no notice that the hearings would be combined. The scheduling entry stated that "[u]pon agreement of the parties, the [f]irst [s]tage [h]earing is hereby scheduled for Tuesday, April 3, 2001, at 11:00 a.m." We find no indication in this entry that the final revocation hearing would be conducted at the same time as the "first stage hearing."
The trial court did address this omission in its April 19, 2001 decision. The court stated that appellant "should have been prepared for his disposition hearing to immediately follow the first stage and not have presumed that the disposition hearing would be set several days later." We disagree. First, we again note that the United States Supreme Court has indicated that the hearings must be two distinct hearings. Absent some notice to the contrary, appellant was entitled to believe that the hearings would be conducted separately rather than merging the two proceedings.
Second, we note that many courts have held that the preliminary hearing's purpose is to prevent the probationer's unjust imprisonment pending the final revocation hearing. See State v. Delaney (1984),11 Ohio St.3d 231, 233, 465 N.E.2d 72, 74, also see Weaver, supra at 516, 751 N.E.2d at 1099, State v. Henderson (1989), 62 Ohio App.3d 848,853, 577 N.E.2d 710, 714; State v. Williams (1988), 43 Ohio App.3d 184,187, 540 N.E.2d 300, 303. This was the only issue that appellant could reasonably have been expected to be prepared to address at the "first stage" or preliminary hearing. It is unreasonable to expect appellant to be prepared to address other issues (i.e. appropriate sanctions) without some advance warning.
We acknowledge, however, a line of cases that hold that probation may be revoked without conducting two separate hearings if the probationer is not prejudiced. See e.g. State v. Miller (1975), 45 Ohio App.2d 301,306, 345 N.E.2d 82, 86; also see State v. Osborn (Jun. 26, 2001), Marion App. No. 9-2000-107, unreported; State v. Stokes (Jun. 17, 1999), Union App. No. 14-98-53, unreported. In the case sub judice, however, we conclude that the format may have prejudiced appellant. The April 3, 2001 hearing transcript reveals that defense counsel informed the court that she had received evidence that morning which could be favorable to her client, but that she did not have the opportunity to investigate that evidence. Further, it does not appear that appellant was provided the opportunity to call witnesses on his behalf.
Thus, we cannot conclude, with any reasonable certainty, that appellant has not demonstrated prejudice. For all these reasons, we believe that the interests of justice require that this judgment be reversed and the matter remanded for a final revocation hearing. We hasten to add, however, that our decision should not be construed as a comment on the underlying merits of this case.
Accordingly, appellant's first assignment of error is accordingly well-taken and hereby sustained.
 II
Appellant argues in his second assignment of error that the trial court erred in imposing five years of post-release control. In light of our ruling on appellant's first assignment of error this assignment of error has been rendered moot and will be disregarded. See App.R. 12(A)(1)(c).
Thus, having sustained the first assignment of error, we hereby reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion to the trial court.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and that the case be remanded for further proceedings. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] The precise nature of the relationship between appellant and Norris is not entirely clear from the record. However, in his brief appellant describes Norris as his "common law wife."
[2] Appellant did not appeal his original conviction but, on October 21, 1998, he filed a pro se petition for postconviction relief under R.C. 2953.21. The trial court denied his petition without a hearing and we affirmed that decision in State v. Boling (Dec. 6, 1999), Athens App. No. 98CA49, unreported.
[3] At the sentencing hearing, appellant pleaded with the trial court to send him to SEPTA explaining that he had been an "alcoholic for seven years" and that he could "see a lot clearer" since he had been in jail and forced to stop drinking. Appellant said that he "want[ed] help" to stay off alcohol.